UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Richard S. Belde,

        Plaintiff,

v.

Ferguson Enterprises, Inc.,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-4573 ADM/AJB

___

Wayne A. Kenas, Esq., Kenas Law Firm Ltd., Edina, MN, argued for and on behalf of Plaintiff.

Elizabeth A. Papacek, Esq., Leonard, Street & Deinard, Minneapolis, MN, argued for and on behalf of Defendant.

___

## I. INTRODUCTION

On August 25, 2005, oral argument before the undersigned United States District Judge was heard on Defendant Ferguson Enterprises, Inc.'s ("Ferguson" or "Defendant") Motion for Summary Judgment [Docket No. 11] and Plaintiff Richard S. Belde's ("Belde" or "Plaintiff") Motion for Partial Summary Judgment [Docket No. 20]. In his Complaint [Docket No. 1], Belde alleges Ferguson violated the Minnesota Drug and Alcohol Testing in the Workplace Act when it released him from employment in April 2004. Additionally, the Complaint charged Ferguson with defamation, breach of contract, and invasion of privacy.[1] For the reasons set forth herein, Defendant's Motion is granted and Plaintiff's Motion is denied.

## II. BACKGROUND

On September 4, 1990, Plaintiff Richard S. Belde was hired as a driver by PVF Midwest.

___

[1] Plaintiff has agreed to dismiss his invasion of privacy claim. Defendant moves for summary judgment on all remaining counts. Plaintiff seeks summary judgment on all counts with the exception of his defamation claim.

Belde Dep. (Papacek Aff. [Docket No. 13] Ex. 1) at 41.  In 1997, PVF Midwest was purchased by Familian Northwest, Inc., which became Ferguson Enterprises, Inc. in February 2000.  Id. at 43-48.  As a driver, Belde's job consisted of driving 20 to 24-foot bed trucks with gross vehicle weights in excess of 30,000 pounds.  Id. at 42-43.  Additionally, Belde's responsibilities included loading trucks at the Ferguson warehouse and unloading trucks at customer locations.  Id. at 41-42.  As a prerequisite to performing his job, Belde was required to hold a commercial driver's license ("CDL") and maintain his Department of Transportation ("DOT") driver qualification file.  Id. at 42, 45, 49.

Throughout his tenure at Ferguson, Belde maintained his DOT driver qualification.  This required authorizing the release of his driving records; an annual certification of driving violations; and a physical every other year.  Id. at 78-87, Exs. 10-16 (Papacek Aff. Exs. 7-13).  Additionally, Belde's driver qualification file contained a signed acknowledgment stating Belde was provided with materials regarding the Federal Alcohol and Drug Testing Regulations.  Id. at 76-77, Ex. 9 (Papacek Aff. Ex. 6).

In June 2001, Belde began working in the Ferguson warehouse as a warehouse clerk.  Id. at 51, Ex. 7 (Papacek Aff. Ex. 4).  At the warehouse, Belde was responsible for loading and unloading trucks, and operating a crane and forklift as necessary.  Id. at 55.  At the time Belde was transferred to the warehouse, he was informed he would remain a backup driver; and as a result, should maintain his CDL and driver qualification file, which he did.  Id. at 51-52.

Following his transfer to the warehouse, Belde underwent yearly performance evaluations.  In 2002, Ken Crichton, the warehouse manager, wrote "warehouse/driver" as Belde's job classification.  Id. at 68, 156, Ex. 8 (Papacek Aff. Ex. 5); Crichton Dep. Ex. 1 (Papacek Aff. Ex. 17).  However, on Belde's 2003 evaluation, he was listed only as

2

"warehouse." Belde Dep. at 68, 156, Ex. 8. Additionally, in late 2003, Belde learned another driver was transferring to the warehouse, and would also serve as a backup driver. Id. at 68. In December 2003, over the Christmas holiday, Belde volunteered to drive a truck for a short period, and did in fact do so. Id. at 69.

On April 22, 2004, Ferguson's Risk Management Department, located in California, informed Crichton and operations manager Eric Johnson that Belde had been randomly selected by a third-party vendor for a DOT-required drug test. Crichton Dep. (Papacek Aff. Ex. 2) at 35; Johnson Dep. (Papacek Aff. Ex. 3) at 31-32. On that same day, shortly after Belde arrived for work, Crichton told Belde he was to submit to the drug test. Belde Dep. at 104. In response, Belde told Crichton he had been out partying, and would rather not take the test. Id. at 104-05; Crichton Dep. at 42. Crichton asked Belde to wait in the warehouse while he consulted Johnson. Belde Dep. at 105-06. Johnson reported the situation to Ferguson's in-house counsel, who advised Johnson that Belde had two options: one, to take the test, or two, refuse to take the test, which would result in Ferguson considering the test result positive. Crichton Dep. at 49; Johnson Dep. at 35-36. Belde was then brought to Johnson's office and given these options. Belde Dep. at 109-10; Crichton Dep. at 49; Johnson Dep. at 36. Belde was advised that if he refused to take the test, cause for termination would exist, and Belde would be suspended immediately. Belde Dep. at 110; Crichton Dep. at 51; Johnson Dep. Ex. 2 (Papacek Aff. Ex. 20). Belde refused to take the test and left the Ferguson facility. Belde Dep. at 113, 119. The next day, Johnson attempted to contact Belde, but was not able to reach him until Monday, April 26, 2004. Johnson Dep. Ex. 2. At that time, he informed Belde that he was terminated. Belde Dep. at 114; Johnson Dep. Ex. 2.

After his termination, Belde sought new employment at Asian Foods, Inc. as a tractor-

CASE 0:04-cv-04573-ADM-AJB   Document 28   Filed 08/31/05   Page 4 of 11


trailer driver. Belde Dep. at 126-27. During a phone interview, Belde told his interviewer that he left Ferguson because he refused to take a drug test. Id. at 128.

### III. DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

#### B. Minnesota DATWA Claim

In his first cause of action, Belde avers Ferguson violated Minnesota's Drug and Alcohol Testing in the Workplace Act ("DATWA") during the testing process which led to his termination. As a threshold matter, it must be determined if federal DOT regulations preempt Belde's DATWA claims.

The Federal Motor Carrier Safety Administration, the DOT agency which regulates drug and alcohol testing for carriers and CDL holders, has issued regulations on drug and alcohol testing. 49 C.F.R. § 382.101 et seq. The regulations determine who is required to participate in

the testing program and how the testing is conducted.  49 C.F.R. § 40.1.  Belde was given a Federal Motor Carrier Safety Regulations Pocketbook, which summarizes the relevant regulations, during his employment.  Belde Dep. at 82, Ex. 12.  The parties do not dispute that Ferguson is an employer as defined by the DOT regulations and that some of Ferguson's trucks are commercial motor vehicles covered by the regulations.  49 C.F.R. § 382.107; Belde Dep. at 42.  Therefore, Ferguson is required to follow testing regulations for drivers required to have a CDL.  49 C.F.R. § 382.305.

Under the Supremacy Clause, federal law may preempt state law in certain circumstances.  Here, Ferguson argues the DOT regulations explicitly preempt the DATWA regulations.  Explicit preemption occurs when a federal statute expressly defines its preemptive effect.  Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300 (1988).  Additionally, when the state law conflicts with the federal law so that the accomplishment of the objectives of Congress are frustrated, the state law is preempted.  Id. at 300.  Finally, federal regulations retain the same preempted effect that federal statutes enjoy.  Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982).

In this case, both the statute authorizing the regulations and the regulations themselves contain preemption language.  The Federal Omnibus Transportation Employee Testing Act states: "A State or local government may not prescribe or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this section."  49 U.S.C. § 31306(g).  Similarly, the regulations state that when compliance with both state laws and the federal regulations is not possible, or when the state laws are an "obstacle to the accomplishment and execution of any requirement" in the regulations, the state law must be preempted.  49 C.F.R. § 382.109.  Additionally, the federal regulations elaborate on the purpose of preemption

in this context:

> The purpose of preemption is to avoid the confusion and expense of inconsistent requirements for employers or testing entities that operate in several States and to prevent interference with the functioning of the Federal program by extraneous, burdensome requirements that may defeat its purpose and benefits by making effective implementation difficult or impossible (e.g., by requiring that employers pay for any rehabilitation or requiring confirmation tests beyond those required by DOT). Because of the nationwide application of the Federal program and the interstate nature of the operations covered, even minor requirements in the aggregate may become unduly burdensome. For this reason, we intend to scrutinize closely State and local requirements under this preemption authority.

Limitation on Alcohol Use by Transportation Workers, 59 Fed. Reg. 7302, 7317 (1994). The language in the statute, combined with the federal regulations and commentary, explicitly preempt state law to the extent that it conflicts or obstructs the enforcement of DOT regulations.

Because DOT regulations can have preclusive effect on state laws, it must be determined whether this case presents such a situation. First, however, Belde's argument that he was not subject to testing under the DOT must be addressed. Belde argues that, because he was no longer a driver for Ferguson, he was not subject to DOT regulation. In support of his argument, Belde relies on his final evaluation form, in which his position was identified as "warehouse," where previously, his position had been identified as "warehouse/driver." He also suggests that the transfer of another driver to the warehouse relieved him of backup driver duties. Additionally, Belde contends that because he had not driven a truck for Ferguson for approximately four months[2] and he was not scheduled for future driving for Ferguson, he was no longer considered a driver. Finally, Belde claims that he was no longer required to maintain his CDL. Belde cites 49 C.F.R. § 655.4 for the definition of "covered employees:" "Covered

---

[2] There is some dispute as to the last time Belde drove for Ferguson. Belde claims the last occurrence was in December 2003, while Ferguson claims Belde did some additional driving in January 2004. The disparity, however, is without significance here.

6

employee means a person . . . who performs or will perform a safety-sensitive function for an entity subject to this part." Belde contends that he was no longer required to perform a "safety-sensitive function" in his warehouse role; therefore, he was no longer subject to the DOT regulations.

The undisputed evidence, however, does not support Belde's position. Although his final evaluation form does list his position as "warehouse," all other evidence is that Belde remained a backup driver. First, and most importantly, Belde drove trucks for Ferguson for a period of time in December 2003, after the November evaluation which listed his position as "warehouse."[3] Second, Ferguson employees testified that Belde retained his backup driver position. Johnson Dep. at 12-13, 29-30, 40. Ferguson also argues Belde took steps, in December 2003, to maintain his CDL. Belde Dep. at 68-69, 74-75, 85, Ex. 15. Finally, Belde himself admitted that Ferguson never told him that he was no longer a backup driver. Id. at 68, 75.

Further, Belde cites the wrong federal regulation for the definition of a covered driver. The section cited by Belde governs programs implemented by employers who receive financial assistance from the Federal Transit Administration. 49 C.F.R. §§ 655.1, 655.4. No evidence has been proffered that Ferguson performs this type of work. Ferguson correctly states that Belde is appropriately categorized under the regulations of the Federal Motor Carrier Safety Administration regulations, which includes "casual, intermittent or occasional" drivers. 49 C.F.R. § 382.107. Under this definition, Belde is a driver subject to DOT regulations. The driving performed by Belde in December 2003 in particular demonstrates that Belde was, at a

---

[3] Belde claims that because he volunteered to drive over the Christmas holiday, as opposed to being required to do so by Ferguson, this is not evidence that he was a backup driver. However, the DOT regulations make no distinction between driving as a "volunteer" as opposed to a "required" activity.

minimum, a "casual, intermittent, or occasional" driver for Ferguson.

Thus, we return to the issue of whether Minnesota DATWA conflicts or obstructs the DOT regulations, and are therefore preempted.  Analysis of the DATWA regulations reveals that, in this instance, DATWA is preempted by the DOT regulations.  Belde bases his DATWA allegations on violations of adequate notice to Belde of testing policies, violations in Belde's termination, and violations of DATWA caused by requiring Belde to submit to a random drug test.  Compl. ¶¶ 20-22.  Meanwhile, Ferguson contends DOT regulations required Belde to take the random test.  49 C.F.R. § 382.305.  Further, federal regulations do not allow drivers to refuse random tests.  49 C.F.R. § 382.211.  Finally, the DOT requires a driver who has failed a test to be barred from safety-sensitive functions.  49 C.F.R. § 382.501.  Under these regulations, and because Belde's job required that he occasionally perform a safety-sensitive function, Ferguson terminated Belde.

Ferguson has established that its actions complied with DOT regulations.  Therefore, although the DATWA regulations cited in Plaintiff's Complaint may not directly conflict with the DOT regulations, they, at a minimum, are an obstacle to carrying them out.  As the Supreme Court has held, obstacles to the carrying out of federal regulations requires a finding of preemption.  <u>Schneidewind</u>, 485 U.S. at 300.  Here, the additional regulations required by DATWA frustrated the purpose of the DOT regulations, which Ferguson followed.  In fact, the very existence of this lawsuit attests to those obstacles.  Because the DATWA regulations conflict with the DOT regulations, they must be preempted in this particular instance.[4]  Therefore, Belde's Minnesota DATWA claims can not survive Ferguson's Motion for Summary

---

[4] The holding in this particular instance should be limited to the facts at bar.  The question of whether DATWA always conflicts with DOT regulations is not before the Court at this time, and the holding in this Order does not attempt to address that question.

Judgment.

## C. Breach of Contract

In addition to his Minnesota statutory claims, Belde alleges that Ferguson breached a contractual Drug and Alcohol Screening Policy (the "Policy") with Belde. This issue turns on whether the Policy was, in fact, a contract between Belde and Ferguson. Minnesota law states that an employer's general statement of policy does not constitute a contractual offer. Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983). Formation of a contract between an employer and employee requires that the terms be definite in form, be communicated to and accepted by the employee, and consideration must be given. Feges v. Perkins Rests., Inc., 483 N.W.2d 701, 707 (Minn. 1992).

The Policy at issue does not constitute a contract. There is no evidence that the Policy was negotiated or that consideration was given. Moreover, Belde testified he was unaware of the terms of the Policy until after he was released by Ferguson. Belde Dep. at 100. Even if the Policy did constitute a contract, there is no evidence in support of its breach. The Policy states clearly that Ferguson follows DOT guidelines as to random testing of drivers during employment. Id. at Ex. 20. As previously discussed, Ferguson followed DOT guidelines in its testing and termination of Belde. Therefore, in addition to failing to show that the Policy was in fact a contract, Belde has failed to demonstrate a breach of the Policy. As a result, Defendant's Motion for Summary Judgment will be granted.

## D. Defamation

In Minnesota, a prima facie claim for defamation must demonstrate four elements: "the statements about the plaintiff are false; the statements were 'published' without privilege; such publication harmed the plaintiff's reputation; and the statements were made with actual malice,

meaning knowledge that the statements were false or reckless disregard of their truthfulness." Weinberger v. Maplewood Review, 668 N.W.2d 667, 679 n.5 (Minn. 2003). Generally, publication of the defamatory statement must be from a defendant to a third party. However, Minnesota courts recognize the narrow compelled self-publication exception to this doctrine, although courts have cautioned that the exception is to be rarely applied. Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876, 888 (Minn. 1986).

Here, Belde claims he was a victim of compelled self-publication because he was forced, when applying for jobs following his termination from Ferguson, to explain that he was fired because he refused to submit to a drug test. Belde's claim fails for several reasons. First, Belde can not demonstrate that the statement at issue was false, which is a requirement for defamation. Weinberger, 668 N.W.2d at 679 n.5. There is no factual dispute that Belde was fired because he refused to submit to a random drug test. As a result, the statement Belde was allegedly compelled to make was not false, and therefore was not defamatory. Additionally, even if the statement was defamatory, Belde has not proffered sufficient evidence of his claim to survive summary judgment. Belde has offered his own testimony that he felt compelled to tell the interviewer at Asian Foods the reason for his termination; however, he offers no independent evidence to support his assertion. Finally, Belde argues that the statement at issue is defamation because Ferguson illegally fired Belde. As set forth previously, Belde's termination was not illegal. In any event, even if it were violative of DATWA, Belde has not adequately demonstrated that Ferguson acted with actual malice, which is required to overcome qualified immunity. Cox v. Crown CoCo, Inc., 544 N.W.2d 490, 498 (Minn. Ct. App. 1996). Judgment will be entered for Ferguson on Belde's defamation claim.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Ferguson Enterprises, Inc.'s Motion for Summary Judgment [Docket No. 11] is **GRANTED**; and

2. Plaintiff Richard S. Belde's Motion for Partial Summary Judgment [Docket No. 20] is **DENIED**; and

3. Plaintiff Richard S. Belde's Complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August, 31, 2005.